UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ODIE LACKEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:04CV439 FRB |
| | ) |
| SBC ADVANCED SOLUTIONS, INC., | ) |
| et al., | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM AND ORDER**

Presently pending before the Court is defendant SBC Advanced Solutions, Inc.'s Motion for Summary Judgment (filed April 1, 2005/Docket No. 27) and defendant Communications Workers of America, Local 6310's Motion for Summary Judgment (filed March 31, 2005/Docket No. 24). All matters are pending before the undersigned United States Magistrate Judge, with consent of the parties, pursuant to 28 U.S.C. § 636(c).

Plaintiff Odie Lackey brings this cause of action, pro se, alleging that his employer, defendant SBC Advanced Solutions, Inc., unlawfully discriminated against him in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e-2, et seq., by imposing disciplinary action upon him and terminating his employment on account of his race. Plaintiff further alleges that defendant Communications Workers of America, Local 6310 ("Union" or "Local 6310") failed to pursue grievances on his behalf on account of his race. Defendants now move for summary

judgment arguing that there are no genuine issues of material fact and that they are entitled to judgment as a matter of law. Plaintiff has not responded to defendants' motions.

Pursuant to Rule 56(c), Federal Rules of Civil Procedure, a court may grant summary judgment if the information before it shows that there are no material issues of fact in dispute and that the moving party is entitled to judgment as a matter of law. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247 (1986). The burden of proof is on the moving party to set forth the basis of its motion, <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986), and the court must view all facts and inferences in the light most favorable to the non-moving party, <u>Matsushita Elec. Indus. Co. v. Zenith Radio</u>, 475 U.S. 574, 587 (1986). Once the moving party shows there are no material issues of fact in dispute, the burden shifts to the adverse party to set forth facts showing there is a genuine issue for trial. <u>Id.</u> The non-moving party may not rest upon his pleadings, but must come forward with affidavits or other admissible evidence to rebut the motion. <u>Celotex</u>, 477 U.S. at 324. Summary judgment is a harsh remedy and should not be granted unless the movant "has established [its] right to judgment with such clarity as to leave no room for controversy." <u>New England Mutual Life Ins. Co. v. Null</u>, 554 F.2d 896, 901 (8th Cir. 1977). The Eighth Circuit has noted, however, that "summary judgment can be a tool of great utility in removing factually insubstantial cases from crowded dockets, freeing courts' trial time for those that

really do raise genuine issues of material fact." City of Mt. Pleasant, Iowa v. Associated Elec. Coop., Inc., 838 F.2d 268, 273 (8th Cir. 1988).

As an initial matter, the undersigned notes that, in compliance with Local Rule 4.01, each defendant has submitted with its Motion for Summary Judgment a Statement of Uncontroverted Material Facts which sets forth each fact in separately numbered paragraphs, with citations to the record to establish such facts. Pursuant to Local Rule 4.01(E), "All matters set forth in the statement of the movant shall be deemed admitted for purposes of summary judgment unless specifically controverted by the opposing party." Local rules of the Court have the force of law. Jetton v. McDonnell Douglas Corp., 121 F.3d 423, 426 (8th Cir. 1997). Inasmuch as plaintiff failed to respond to defendants' Motions for Summary Judgment, and thus failed to specifically controvert the matters set forth in defendants' statements of facts in the manner required by Local Rule 4.01(E) of this Court, such matters in defendants' statements are deemed admitted for purposes of the motion. See Northwest Bank & Trust Co. v. First Ill. Nat'l Bank, 354 F.3d 721, 724-25 (8th Cir. 2003); Harris v. Interstate Brands Corp., 348 F.3d 761, 762-63 (8th Cir. 2003).

**I. Evidence Before the Court on the Motions**

From June 19, 2000, through January 14, 2004, plaintiff Odie Lackey worked at the SBC Advanced Solutions, Inc. (ASI) facility in Earth City, Missouri, as a Network Center Technician.

In this position, plaintiff worked as a coordinator between different departments, receiving calls from customers, identifying problems and routing the calls to the right department to fix the problem. Plaintiff is African-American.

To address performance issues, ASI uses a multi-step procedure which is outlined in the SBC Positive Discipline and Procedure Manual. An "Employee" or "Performance" Discussion is the first step to address performance problems, after which, if the problem is not resolved, a Performance Notice may be issued. At level two of the disciplinary process, a Written Reminder may be issued to the employee, after which, if the problem continues to persist, a Decision Making Leave (DML) may be issued to the employee. A Written Reminder is not required to be issued prior to the issuance of a DML. The DML is the third and final level of ASI's discipline system. If an employee fails to meet all job requirements during the twelve-month period following the issuance of a DML, s/he may be dismissed.

Throughout the course of plaintiff's employment with ASI, the disciplinary process was repeatedly invoked in relation to plaintiff's job performance. Specifically, between October 2000 and January 4, 2004, ASI engaged plaintiff in Employee Discussions on over thirty separate occasions, with such discussions involving multiple issues such as playing telephone games, failing to answer telephones, taking thirteen calls per month instead of an expected twenty-five calls per week, not meeting performance levels,

extensive listening to telephone messages instead of taking calls, attendance, misuse of internet, misuse of ASI property, and improper "ticketing." In conjunction with these discussions, ASI implemented Performance Improvement Plans (PIP's) for plaintiff on March 14, 2001; July 15, 2002; and March 10, 2003. On March 24, 2003, plaintiff was issued a Performance Notice for refusing a management directive. Another Performance Notice was issued to plaintiff on May 15, 2003, for low performance.

On July 26, 2003, acting manager David Whalen issued a DML to plaintiff in relation to plaintiff's performance and conduct, and specifically, for plaintiff's refusal to log into his queue and his refusal to heed Whalen's instruction to position his telephone toward the aisle so that the display could be viewed and monitored. Upon plaintiff's return to work on July 29, 2003, he was provided a DML form to sign and acknowledge the discipline imposed, but plaintiff refused to sign. Plaintiff was aware that the DML was to remain active for a twelve-month period and would continue in effect until July 29, 2004. Plaintiff was also aware that during this twelve-month period, all areas of his performance would be monitored, including attendance, performance and safety, and that if he had any problems during this period he could be terminated. Plaintiff understood that a DML was essentially the last step before termination. Although plaintiff refused to sign the DML paperwork, he acknowledged that he had to satisfactorily meet all job requirements.

A Collective Bargaining Agreement (CBA) exists between ASI and the Communications Workers of America. The CBA outlines the Union's grievance procedure and provides for levels of appeals up to and including arbitration. In relation to his job with ASI, plaintiff was provided with the contract book which details this grievance procedure. With the assistance of Local 6310, plaintiff filed a grievance pursuant to Article XIX of the CBA surrounding the events relating to the DML. Local 6310 processed plaintiff's grievance to the first informal level on August 28, 2003. Plaintiff was present at the first level grievance meeting, as well as Union steward Derek Skibinski and Local 6310 Vice President Shawn Bland. At the meeting, defendant ASI's representatives presented ASI's case against plaintiff, and specifically, presented evidence that on July 26, 2003, plaintiff ignored two direct orders from his manager: one, to log in immediately; and second, to position his telephone toward the aisle. Plaintiff refused to comply with these directives and failed to respond to his manager's questions. ASI determined the DML to be the appropriate step of discipline based on plaintiff's performance and conduct surrounding the July 26, 2003, events, and denied the grievance.

On August 29, 2003, Tony Ellebracht, President of Local 6310, submitted an appeal pursuant to the provision of Article XIX of the CBA, specifically appealing ASI's actions in placing plaintiff on DML. On September 8, 2003, a second informal grievance hearing was held. Mr. Skibinski and Jason Vellmer

appeared on behalf of the Union in presenting plaintiff's appeal. ASI representatives again reiterated ASI's position regarding plaintiff's disciplinary history. ASI representatives noted the multiple levels of discipline that had previously been assessed to plaintiff as a result of his performance issues. ASI then denied the appeal of the grievance.

On December 12, 2003, Local 6310 President Ellebracht and Vice President Bland met with the Director of Human Resources, Ron Zaron, with respect to the formalized appeal of plaintiff's grievance. Mr. Bland outlined the chain of events leading to the charge of insubordination and the ultimate imposition of the DML. Mr. Bland opined that the ASI manager had a problem with plaintiff and that the DML was not warranted. Mr. Zaron indicated that multiple disciplinary steps had been taken prior to the issuance of the DML and that plaintiff had been counseled regarding his job performance and was given PIP's which he failed to follow. It was further noted that plaintiff was in active status on a Performance Notice prior to the July 26, 2003, incident and that the DML was the next appropriate step to be taken regarding plaintiff's performance issues. ASI denied the grievance, effective December 13, 2003.

Mr. Bland spoke with plaintiff on December 16, 2003, and advised him that the grievance had been denied and that the Union would not be pursuing the grievance to the District level based on the overwhelming facts provided by ASI. Mr. Bland explained that

ASI's documentation of plaintiff's past performance and the previous steps of discipline made it unlikely that plaintiff would attain any success at the District level. Plaintiff did not request a review of this determination. This was the last formalized step in the grievance procedure for the local Union.

On January 4, 2004, while on active status on the July 2003 DML, plaintiff was observed by his manager Rodney Lashley to be listening to voice mails for over ten minutes, after he had been on his shift for one and one-half hours. When questioned by Mr. Lashley regarding the situation, plaintiff responded that it was a good question and he was sure that he, Mr. Lashley, could come up with a good answer. The issue was turned over to plaintiff's area manager Debra Gingo and Human Resources Director Zaron for review.

On January 13, 2004, plaintiff was called into his manager's office regarding the events of January 4, 2004, and was notified at that time that he would be sent home for the day. A Union steward was present at the meeting. Plaintiff did not ask the steward to file a grievance regarding the one-day suspension. On January 14, 2004, a return-to-work meeting was held at which ASI representatives Tim LaFaver and Ms. Gingo were present, as well as plaintiff and his Union representative, Mr. Bland. Mr. LaFaver advised plaintiff that he was suspended pending investigation of the January 13, 2004, offense for failing to meet expectations. Mr. LaFaver reviewed plaintiff's prior disciplinary history and advised him that since he was on DML, the incident on January 4,

2004, was serious enough to warrant an additional step of discipline, including termination. When plaintiff was asked if he understood the appropriate standards and expectations for performing his job, he replied that he "somewhat" understood. Mr. LaFaver advised plaintiff that "somewhat" was not an acceptable answer and clarified the standards pursuant to which plaintiff would be expected to work so as to meet an acceptable level of performance. Mr. Bland explained to Mr. Lafaver and Ms. Gringo the inconsistencies in the past disciplinary process and procedure for plaintiff, continuing in his position that plaintiff's manager had a problem with plaintiff and that the difficulties here were driven more by personality issues than by plaintiff's performance. Mr. Bland further argued that termination was not warranted in the present circumstances and that plaintiff was satisfactorily performing his job. In response to this presentation, Mr. LaFaver stated that he would be willing to work with plaintiff if plaintiff would sign a return-to-work agreement and commit that he was going to make every effort to reach the minimum standards set for this position. Mr. Bland and plaintiff reviewed the agreement. Mr. Bland advised, and plaintiff understood, that plaintiff's employment would be terminated if he refused to sign the agreement. Plaintiff refused to sign the return-to-work agreement.

Plaintiff received a letter from ASI dated January 20, 2004, confirming that he was terminated January 14, 2004, following the meeting. Plaintiff never contacted Mr. Bland to process a

grievance regarding his January 14, 2004, termination.

Plaintiff does not believe that Mr. LaFaver's decision to terminate plaintiff's employment was motivated by any racial animus. (Pltf.'s Depo. at 31-32.) At no time did plaintiff's managers and/or supervisors utter racial epithets; nor were derogatory remarks made regarding race. At least ten other African Americans were employed by ASI as Network Center Technicians, and plaintiff has no knowledge whether any of these employees were poorly or unfairly treated in their employment by ASI. Plaintiff believes that employees in Mr. Lashley's group received superior training; at least one African American employee was within Mr. Lashley's group. Plaintiff's belief that his adverse employment actions were race-related is based on his perception that manager Lashley was always watching him and was always "on" him for performance issues; and that Lashley and his friend, manager David Whalen, were able to convince LaFaver to terminate plaintiff's employment. (Pltf.'s Depo. at 35-44, 52.)

With respect to plaintiff's grievance process, at no time did any Union representative make any racially motivated comments to plaintiff, nor does plaintiff believe that any Union representative discriminated against him on account of race. (Pltf.'s Depo. at 181, 183.)

**II. Discussion**

A. <u>Defendant ASI</u>

Title VII of the Civil Rights Act prohibits an employer

from discharging or otherwise discriminating against any individual with respect to the terms and conditions of his employment on the basis of that individual's race.  42 U.S.C. § 2000e-2(a).  To show that he was unlawfully discriminated against on account of his race, a plaintiff alleging race discrimination under Title VII may rely on direct evidence of discrimination, that is, "evidence showing a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated the adverse employment action," <u>Griffith v. City of Des Moines</u>, 387 F.3d 733, 736 (8th Cir. 2004), or sufficient circumstantial evidence which, under the familiar <u>McDonnell Douglas</u> burden-shifting analysis, creates an inference of illegal discrimination.  <u>Griffith</u>, 387 F.3d at 736.  Inasmuch as the record here fails to show any direct evidence of discrimination in defendant ASI's discipline of plaintiff and ultimate termination of plaintiff's employment, the Court must determine whether sufficient circumstantial evidence exists for plaintiff's claim to survive defendant's Motion for Summary Judgment.

Plaintiff must first establish a prima facie case of race discrimination.  <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802 (1973).  To establish a prima facie case in the instant cause, plaintiff must demonstrate that:  1) he is a member of a protected class;  2) he was meeting his employer's legitimate job expectations;  3) he suffered an adverse employment action; and 4)

similarly situated employees outside the protected class were treated differently. Shanklin v. Fitzgerald, 397 F.3d 596, 602 (8th Cir. 2005). If plaintiff can establish a prima facie case, the burden shifts to the employer-defendant to produce evidence that its adverse employment action against plaintiff was for a legitimate, non-discriminatory reason. McDonnell Douglas, 411 U.S. at 802; Shanklin, 397 F.3d at 602. If the employer-defendant satisfies this burden of production, the burden shifts back to the plaintiff to demonstrate that the reason provided by the defendant is pretext for discrimination. Shanklin, 397 F.3d at 602. At all times, plaintiff bears the ultimate burden of proving that he was unlawfully discriminated against on account of his race. Rose-Maston v. NME Hosp., Inc., 133 F.3d 1104, 1107-08 (8th Cir. 1998).

Defendant ASI argues that plaintiff cannot meet his initial burden of establishing a prima facie case of race discrimination inasmuch as the evidence fails to support any inference of discrimination and that, as the plaintiff-employees in Shanklin and Richmond v. Board of Regents of the Univ. of Minn., 957 F.2d 595 (8th Cir. 1992), the plaintiff here was not meeting ASI's legitimate job expectations. For the following reasons, defendant's arguments are well taken.

The evidence before the Court shows that at no time did any ASI representative exhibit any racial animus toward plaintiff, ever say anything of a racially discriminatory nature to plaintiff, or say anything which would cause plaintiff to believe that he was

being disciplined or discharged on account of his race.  Although plaintiff claims that Mr. Lashley always watched him and was on him for performance issues, in the absence of any evidence that similarly situated employees outside the protected class were not subjected to such scrutiny, such conduct does not give rise to a reasonable inference of intentional discrimination against plaintiff as an African American.  <u>See generally</u> <u>Rose-Maston v. NME Hosp., Inc.</u>, 133 F.3d 1104 (8th Cir. 1998); <u>cf.</u> <u>Hanenburg v. Principal Mut. Life Ins. Co.</u>, 118 F.3d 570, 575 (8th Cir. 1997) (constructive discharge)(supervisor's close scrutiny of employee's work performance, including personal telephone use, insufficient to support claim of constructive discharge); <u>Heymann v. Tetra Plastics Corp.</u>, 640 F.2d 115, 124 (8th Cir. 1981) (retaliation) (evidence showed employee's work to be monitored because of declining job performance).

Further, it cannot be said that the evidence before the Court shows that plaintiff satisfactorily met ASI's legitimate job expectations.  Indeed, the undisputed evidence shows plaintiff to have had job performance and conduct problems since nearly the inception of his employment with ASI, and continuing up through the time of his termination.  ASI engaged plaintiff in Employee Discussions on multiple occasions to address these problems, implemented PIP's on three occasions in attempts to help plaintiff improve his performance, and issued disciplinary Performance Notices on two occasions.  Despite the repeated nature of ASI's attempt to

bring plaintiff within the parameters of acceptable job performance, plaintiff continued with his deficiencies; even during periods when plaintiff was, effectively, on active probation for previous performance failures.  Further, plaintiff was aware during such periods that continued performance and/or conduct issues could result in further discipline, including termination.  Within such periods, however, plaintiff continued to have performance and conduct deficiencies, which thereby resulted in additional discipline (the DML) and, ultimately, his termination.  Plaintiff has offered no evidence demonstrating otherwise.

In light of the above, plaintiff has failed to demonstrate that he met ASI's legitimate job expectations, that similarly situated employees outside the protected class were not subjected to the employment actions imposed upon plaintiff, and thus that defendant ASI's issuance of the DML in July 2003 and ultimate termination of plaintiff's employment occurred under circumstances which create an inference of unlawful discrimination.  Accordingly, plaintiff has failed to meet his burden of establishing a prima facie case of race discrimination.  See Shanklin, 397 F.3d at 602-03; Richmond, 957 F.2d at 598 (prima facie case not met where employee's performance unsatisfactory, she ignored progressive warnings and discipline, and did not improve performance).

Even if the evidence before the Court was sufficient to show that plaintiff had established a prima facie case of race

discrimination, defendant ASI nevertheless has articulated a legitimate, non-discriminatory reason for its determination to discipline and ultimately discharge plaintiff, and no evidence before the Court shows this reason to be pretextual.

The undisputed evidence before the Court shows that defendant ASI imposed discipline upon plaintiff and ultimately terminated his employment on account of plaintiff's continued performance deficiencies and conduct problems, despite repeated attempts by ASI to help plaintiff cure such deficiencies. This is a legitimate, non-discriminatory reason for discipline and termination. Shanklin, 397 F.3d at 603 (failure to improve in deficient areas in which employee was counseled); Kiel v. Select Artificials, Inc., 169 F.3d 1131 (8th Cir. 1999) (insubordination); Richmond, 957 F.2d at 598 (unsatisfactory job performance). Thus, in order to survive defendant ASI's Motion for Summary Judgment, plaintiff must show that this reason provided by the defendant is pretext for discrimination. Plaintiff has not responded to defendant's Motion for Summary Judgment, however, and the unrebutted evidence before the Court does not provide any such evidence. Indeed, the evidence before the Court unequivocally shows race not to have been a factor in defendant's employment decisions.

At all times, plaintiff bears the burden of demonstrating a genuine issue of fact as to whether the employer intentionally discriminated against him on account of his race. Elmahdi v.

Marriott Hotel Servs., Inc., 339 F.3d 645, 656 (8th Cir. 2003); Thomas v. Runyon, 108 F.3d 957, 960 (8th Cir. 1997). Plaintiff has failed to meet this burden inasmuch as he has failed to produce any evidence to show that defendant ASI's adverse employment actions were racially motivated. Defendant ASI should therefore be granted judgment as a matter of law as to plaintiff's claim.

B.  Defendant Union

Title VII of the Civil Rights Act makes it an unlawful employment practice for a labor organization to discriminate against any individual on the basis of that individual's race. 42 U.S.C. § 2000e-2(c). A union is subject to Title VII liability if it breaches its duty of fair representation because of the complainant's race. Martin v. Local 1513 & Dist. 118 of the Int'l Ass'n of Machinists & Aerospace Workers, 859 F.2d 581, 584 (8th Cir. 1988).

The evidence before the Court shows the Union to have investigated ASI's issuance of the DML and to have pursued the grievance related thereto at plaintiff's request and on plaintiff's behalf through the appropriate steps of the grievance process. Plaintiff did not request the Union to pursue the grievance to the District level, nor does the evidence show the Union's failure to further pursue such grievance to have been based on plaintiff's race. With respect to plaintiff's termination, the evidence shows plaintiff not to have requested that a grievance be pursued in the matter, despite plaintiff's possession of the CBA which outlined

the grievance procedure for such circumstance and plaintiff's recent personal familiarity with the Union's pursuit of grievances. Nor has plaintiff presented evidence to show that the Union refused to file a grievance it thought had merit or to pursue a grievance to further levels it thought had a reasonable likelihood of success. Nor has plaintiff presented any evidence to show that the Union's failure to pursue the DML grievance to the District level or failure to pursue any grievance related to plaintiff's termination was done intentionally so as to avoid any antagonism of the employer or in deference to the perceived desires of its white membership. In light of such lack of evidence, coupled with no evidence that the Union held any racial animus against or denigrated African Americans generally, defendant Union cannot be liable under Title VII on plaintiff's claim of race discrimination. Carter v. Chrysler Corp., 173 F.3d 693, 704 (8th Cir. 1999); see also Goodman v. Lukens Steel Co., 482 U.S. 656, 668-69 (1987).

Plaintiff simply has produced no evidence to show that the Union dealt with him in a discriminatory manner or that its action or inaction prevented ASI from fulfilling any obligations to him. Nor does the evidence show the Union to have mishandled plaintiff's grievance or to have engaged in arbitrary or discriminatory conduct as to whether, and to what extent, it would pursue grievances on plaintiff's behalf. On the undisputed evidence before the Court, therefore, defendant Union is entitled to summary judgment on plaintiff's claim. Carter, 173 F.3d at 704;

see also Goodman, 482 U.S. at 668-69; Martin, 859 F.2d at 584-85.

Therefore, for all of the foregoing reasons,

**IT IS HEREBY ORDERED** that defendant SBC Advanced Solutions, Inc.'s Motion for Summary Judgment (Docket No. 27) and defendant Communications Workers of America, Local 6310's Motion for Summary Judgment (Docket No. 24) are granted in their entirety, and plaintiff's claims are dismissed with prejudice.

Judgment shall be entered accordingly.

*Frederick R. Buckles*
UNITED STATES MAGISTRATE JUDGE

Dated this  _15th_  day of July, 2005.